## STATE OF FLORIDA v GRAHAM

Case No. 86-156350TTA02

County Court, Palm Beach County

June 17, 1987

### APPEARANCES OF COUNSEL

**Michael Celeste,** State Attorney's Office, for plaintiff.

**Jeffrey Shapiro** for defendant.

## OPINION OF THE COURT

HOWARD C. BERMAN, County Judge.

### ORDER GRANTING STATE'S MOTION IN LIMINE IN PART AND DENYING MOTION IN LIMINE IN PART

This cause came before the Court on State of Florida's Motion in Limine to allow the State to introduce all aspects of the horizontal gaze nystagmus test administered to the Defendant by the arresting officer at the time of the arrest for driving under the influence of alcohol. The State of Florida was represented by Assistant State Attorney Michael Celeste and the Defendant was represented by Jeffrey S. Shapiro. The Court having taken testimony, heard argument of counsel, and being otherwise fully advised in the premises, the Court finds as follows:

### FACTS

On September 25, 1986, Deputy Sheriff Schultetus stopped the Defendant for excessive speed on Congress and Gun Club Road. After the stop, Deputy Schultetus observed that the Defendant's face was flushed, his eyes were dilated, and there was an odor of alcoholic beverage coming from his breath. Feeling that the Defendant might be DUI, Deputy Sheriff Schultetus administered several physical sobriety tests including the horizontal gaze nystagmus (HGN). After those tests were completed, the Defendant was arrested and charged with DUI. Deputy Sheriff Schultetus testified that the Defendant was unstable on his feet and was unable to perform the standing balance test and did not do very well on the one-legged stand test. He also testified that he would have arrested the Defendant even without the HGN test.

Deputy Schultetus found that the Defendant had distinct nystagmus at maximum deviation, at a total loss of smooth pursuit across the horizontal gaze, and the angle of onset was at an angle of 40 degrees or less. It was the opinion of Deputy Sheriff Schultetus that at the time of administering the HGN test, the Defendant had a blood alcohol level in excess of .10%. Two hours after the arrest, the Defendant submitted to two breath tests. These breath tests were given at 3:11 a.m. and 3:16 a.m. and revealed a .13% and a .14% blood alcohol level respectively. Deputy Sheriff Schultetus also testified as to his experience with the Palm Beach Sheriff's Office as well as with the Illinois State Police Department. He has been involved with the PBSO with 250 arrests as a member of the DUI tact team and with the exception of two, tested

94

all of the defendant's for HGN. He has gone to numerous schools and taken many courses in the effects of alcohol and the giving of the HGN test and he is presently an instructor for HGN.

The second witness on behalf of the State was Tom Carroll. Tom Carroll is a toxicologist with the Palm Beach Sheriff's Office. He has been declared an expert in the field of toxicology, pharmacology, and the effects of alcohol on the human body. Mr. Carroll has had no formal training as an ophthalmologist. He testified as to how alcohol consumption affects the relationship between the brain and the eye. Mr. Carroll stated that an individual cannot control the "jerky" motion of the eye while a person is under the influence of an intoxicant. He also related that there are many types of contributory factors to nystagmus besides alcohol. Mr. Carroll also testified as to the difference between roadside physical tests and HGN in that a person cannot practice HGN, unlike a roadside sobriety test. He also testified that authors and scientists disagree as to the degree of angle when the .10% standard begins in the eye.

The third witness offered by the State was Trooper R.E. Davis. Trooper Davis has been with the Florida Highway Patrol for 10 years and is a certified instructor for the many types of breathalyzer testing machines. He also has instructed in many police academies as well as many other courses as to the effects of alcohol and also as to HGN. He has also tested hundreds of subjects for HGN in which he has given his opinion that based on his observations of these individuals, they have a reading of over a .10% blood alcohol level. Subsequently, these individuals were then tested by a breathalyzer machine which confirmed his opinion that they did have over a .10% blood alcohol level.

The issue before this Court is whether or not this Court will allow the introduction of the Defendant's HGN as an indicia of impairment in establishing probable cause and also as corroboration of a subsequent breath alcohol content reading.

## FINDINGS

Both the State and Defense counsel have submitted excellent and well prepared memoranda of law concerning the horizontal gaze nystagmus test. According to the research, there has been no appellate decision as to this issue in the State of Florida. Each Florida Judicial Circuit has viewed HGN differently.

According to the testimony, nystagmus is an involuntary, rapid oscillation of the eyes which occurs when a person looks to one side and fixates on an image. Although there are many types of nystagmus,

**95**

the type usually used in field sobriety testing is horizontal gaze nystagmus. HGN may be caused by alcohol or other drugs such as barbiturates or antihistamines. The HGN test is based on the known principle that certain toxic substances, including alcohol, cause nystagmus. See *The Merck Manual of Diagnosis and Therapy*, 1980 (14th Ed. 1982). In an HGN test, a driver is asked to cover one eye and focus the other eye on an object (usually a pen) which is held by a police officer at the driver's eye level. The field test is a measurement of the angle of onset of the jerking movement when the eye tracks this object. If the onset of nystagmus occurs at an angle less than 45 degrees in relation to the driver's nose, it is felt by the witnesses and proponents of the test that it can be estimated whether the driver's blood alcohol content exceeds the legal limit of .10%. In the case *sub judice*, Deputy Sheriff Schultetus performed the test and in his opinion felt that the driver had a reading of over .10%.

Florida Statute 316.1932(1)(b)1 (1985) provides that an analysis of a person's breath, to be considered valid, must be performed substantially according to the methods approved by the Department of Health and Rehabilitative Services. The Defendant argues that the HGN test is not an approved test pursuant to the statute and therefore it is inadmissible. The Defendant also argues that the HGN test did not satisfy the *Frye* standard of admissibility. *Frye v. United States*, 293 Fed. 1013 (D.C. Cir. 1923). The State bases their argument on *State v. Superior Court*, 718 P.2d 171 (Ariz, 1986), also known as the *Blake* decision. The *Blake* case provides an in-depth analysis of HGN and the *Frye* standard and is the only reported case nationwide which has been addressed at the Supreme Court level.

In *Blake*, the Arizona Supreme Court noted that evidence which merely forms the basis for probable cause does not have to be tested under the *Frye* rule. *Blake* at p. 177. The Court concluded that the HGN test when properly conducted by a trained officer, together with driving observations, performance on field sobriety tests, and other observations, may be used to help establish probable cause to arrest. The Arizona court went further and based on the facts of that case, concluded that the HGN test had been generally accepted in the relevant scientific community. The Court went on and held that the HGN test satisfied the *Frye* test of general acceptance. Based upon their ruling, testimony of a Defendant's nystagmus is admissible on the issue of blood alcohol level when accompanied by proper foundation as to the techniques used and the officer's ability to use them, as is the case with the other field sobriety test results on the question of the accuracy of the chemical analysis. *Blake* at p. 181. However, the Court

96

limited its ruling to make it clear that the Court did not mean that evidence of nystagmus is admissible to prove a BAC of .10% or more in the absence of a laboratory chemical analysis of blood, breath or urine. HGN test results would not be admitted as direct, independent evidence to quantify blood alcohol content.

*Frye v. United States,* 293 Fed. 1013 (D.C. Cir. 1923) established the standards by which scientific testimony would be accepted in court. *Frye* requires that a particular scientific principle be not only reliable but generally accepted as such by the relevant scientific community before becoming admissible in the court. *Frye* at page 1014. In *Blake,* the Court identified the relevant scientific community as including behavioral psychologists, and law enforcement agencies. Optometrists, ophthalmologists, and neurologists were not considered paramount members of the scientific community because members of these disciplines have not studied the effects of alcohol on the eyes as related to DUI detection to the same extent as other professionals.

The State has submitted numerous cases from various jurisdictions including Oregon, Ohio, Kansas, Illinois, California, Indiana, and Pennsylvania in which HGN is admissible in some form and for limited purposes. Theodore S. Booras, Esquire, a former Assistant State Attorney in the Fifteenth Judicial Circuit, compiled a thorough survey of judicial circuits throughout the State of Florida. The study was conducted through an extensive phone and mail survey with other state attorneys throughout the State of Florida between the months of May and October of 1986. Of all the counties in the State of Florida, there is only a small number that do not allow any form of HGN results in court. All other counties do allow testimony based on various factors in reference to HGN.

After reviewing the testimony, the literature, and the various cases, this Court is of the opinion that based on the qualifications and training of Deputy Sheriff Schultetus, he will be allowed to relate his observations of the Defendant's HGN as part of his testimony in establishing probable cause. However, if the HGN test is the sole basis for an officer's probable cause, then this Court will not allow such testimony. This Court considers the HGN test as another field screening function, like the other presumptive tests. All the physical tests performed by Deputy Schultetus require a certain expertise in both administering the test properly and accurately recording his observation of the Defendant's performance. No special equipment or scientific expertise is required. The test merely involved the officer's observations. The HGN test is but one of the many physical signs that a subject's

**97**

motor function may be impaired due to some alcohol or other controlled substance.

The State is also requesting that Deputy Schultetus be allowed to render an opinion, based upon the Defendant's HGN and performances on the roadside tests, that the Defendant had a BAC level of .10% or above, at the time of the stop which would be corroboration of the subsequent BAC reading. Florida Statutes 316.1932(1)(b)1 (1985) read in conjunction with HRS rules 10D-42.22-10D-42.24 requires that chemical breath testing methods for determining blood alcohol content shall be approved by the Department of Health and Rehabilitative Services, based on scientific principles. The horizontal gaze nystagmus test does not involve a chemical analysis, nor does it require a sample of breath, blood, or urine. Hence, the nystagmus test cannot be deemed a chemical test for intoxication under statutory conditions. This Court finds that absent statutory admissibility, the arresting officer will not be allowed to testify as to his opinion that the Defendant had a BAC reading of over .10% based on the observations of the HGN test. Therefore, it is

ORDERED AND ADJUDGED that the State of Florida's Motion in Limine is granted in part and denied in part.

DONE AND ORDERED in chambers in West Palm Beach, Palm Beach County, Florida this 17th day of June, 1987.